1
2
3          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF WASHINGTON
4
5
   GALI SALTOS,                              No. CV-12-3130-FVS
6
                    Plaintiff,
7                                             ORDER GRANTING DEFENDANT'S
   vs.                                        MOTION FOR SUMMARY JUDGMENT
8                                             AND DENYING PLAINTIFF'S MOTION
   CAROLYN W. COLVIN, Acting                  FOR SUMMARY JUDGMENT
9  Commissioner of Social Security,
10                  Defendant.

11        BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 17, 21.)
12  Attorney D. James Tree represents plaintiff; Special Assistant United States Attorney Gerald J.
13  Hill represents defendant. After reviewing the administrative record and briefs filed by the
14  parties, the court GRANTS defendant's Motion for Summary Judgment and DENIES plaintiff's
15  Motion for Summary Judgment.
16                              **JURISDICTION**
17        Plaintiff Gali Saltos (plaintiff) protectively filed for disability insurance benefits (DIB)
18  and supplemental security income (SSI) on April 21, 2008. (Tr. 19.) Plaintiff alleged an onset
19  date of May 25, 2007. (Tr. 46, 126, 133.) Benefits were denied initially and on reconsideration.
20  (Tr. 85, 90, 92.) Plaintiff requested a hearing before an administrative law judge (ALJ), which
21  was held before ALJ R.J. Payne on June 10, 2010. (Tr. 46-79.) Plaintiff was represented by
22  counsel and testified at the hearing. (Tr. 56-73.) Medical expert Thomas McKnight, Ph.D. and
23  plaintiff's mother, Gloria Mabry, also testified. (Tr. 48-56, 74-79.) The ALJ denied benefits (Tr.
24  19-34) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court
     pursuant to 42 U.S.C. § 405(g).
25
26
27

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was born in 1987 and was 20 years old at the time of the hearing. (Tr. 33.) He completed eleventh grade and was three credits shy of graduating. (Tr. 73.) He was in a car accident in May 2007. (Tr. 60.) He fell from the car, hit his head on a speed bump, and his right arm was run over by another vehicle. (Tr. 60.) He fractured his skull. (Tr. 67.) As a result of the accident, he has severe headaches that start at the base of his neck and travel up the back of his head to the side of eyes. (Tr. 60.) The headaches throb and last for hours. (Tr. 61.) He has headaches daily. (Tr. 61.) He also has nausea and vomiting in the mornings. (Tr. 61.) He has sharp shooting pains in his right shoulder and knee. (Tr. 61.) Plaintiff has been diagnosed with narcolepsy. (Tr. 67.) Plaintiff testified he had mental problems as a child. (Tr. 62.) He saw violent images in his head and as he got older he sometimes acted on them by randomly beating up other people. (Tr. 62.) At age 16, he was introduced to marijuana which helped him control his violent impulses, although he still saw violence in his head. (Tr. 62.) He also burned and mutilated himself starting at age 13. (Tr. 63.) Plaintiff admitted using marijuana to self-medicate three days before the hearing. (Tr. 58.) He has been using marijuana since age 16. (Tr. 62, 64.) He has used other street drugs. (Tr. 59, 64.) He does not think his problems are caused by marijuana and he has been less violent since he has been using marijuana. (Tr. 66.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial

evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in

substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

However, a finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). When there is medical

evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). It is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007). If drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since May 25, 2007, the alleged onset date. (Tr. 21.) At step two, the ALJ found plaintiff has the following severe impairments: degenerative joint disease, right shoulder, mild; and substance addiction disorders. (Tr. 21.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 26.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he should avoid climbing ladders, ropes and scaffolds and moderate exposure to hazardous machinery and heights. He is capable of occasional crawling, and overhead reaching with the right upper extremity.

(Tr. 28). At step four, the ALJ found plaintiff is unable to perform past relevant work. (Tr. 32.) After considering plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (Tr. 33.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act from May 25, 2007 through the date of the decision. (Tr. 34.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) failing to account for limitations assessed by Dr. Flanagan despite giving the opinion great weight; (2) failing to find additional severe impairments at step two; (3) failing to consider or reject the opinion of Dr.

McRae; and (4) improperly rejecting the opinions of Mr. Clark and Ms. Vaagen. (ECF No. 17 at 8-19.) Defendant argues the ALJ: (1) did not err by omitting additional diagnoses from the step two and RFC findings; (2) properly evaluated Dr. Flanagan's opinion; (3) properly evaluated the opinions of Mr. Clark and Ms. Vaagen; and (4) did not err with regard to Dr. McRae's opinion. (ECF No. 21 at 5-16.)

**DISCUSSION**

**1.    Step Two**

Plaintiff argues the ALJ committed reversible error at step two by finding several impairments not severe and thus not accounting for limitations from those impairments in the RFC. (ECF no. 17 at 10-13.) At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549050 (9th Cir. 1985).

The Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." S.S.R. 85-28. The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." S.S.R. 85-28. Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting." *Id.*

Plaintiff first argues the ALJ should have found narcolepsy is a severe impairment. (ECF No. 17 at 10-11.) Plaintiff points to a 2004 sleep disorder clinic assessment confirming a narcolepsy diagnosis. (Tr. 251.) Plaintiff's disability report on appeal states he is tired all the time no matter how long he sleeps. (Tr. 162.) He told Dr. Billings he is always fatigued and feels like he is "in a zombie state." (Tr. 283.) When the psychological expert, Dr. McKnight, was asked about narcolepsy, he testified, "There was talk about narcolepsy. I don't know that he was formally diagnosed with narcolepsy." (Tr. 56.) Plaintiff asserts the ALJ "relied solely on the ME's statement that he did not know of any such evidence." (ECF No. 17 at 11.) However, the ALJ noted plaintiff's report to Dr. Billings that he was having sleep problems due to narcolepsy and sleep apnea and did not mention Dr. McKnight's comment regarding narcolepsy. (Tr. 23.)

Nonetheless, although no treating or examining physician or psychologist diagnosed narcolepsy after the alleged onset date or identified any limitations attributable to narcolepsy, the ALJ included limitations on climbing ladders, ropes and scaffolds and moderate exposure to hazardous machinery and heights in the RFC due to narcolepsy based on the findings of reviewing physician Dr. Platter, whose opinion the ALJ gave some weight. (Tr. 28, 32, 276, 278, 360.) Plaintiff points to no other findings supporting limitations caused by narcolepsy. As a result, even if the ALJ erred at step two by failing to identify narcolepsy as a severe impairment, the ALJ accounted for all limitations attributable to narcolepsy which are supported by the record in the RFC finding. Thus, any error at step two with respect to narcolepsy is harmless error. As long as there is substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination, the error is harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

Plaintiff also argues the ALJ erroneously failed to find the following to be severe impairments at step two: mood disorder due to head injury with emotional dysregulation; dysthymic disorder, impulse control disorder; personality disorder; or post-head injury chronic pain. (ECF No. 17 at 11-13.) Dr. Billings made these diagnoses in a July 10, 2008 psychological assessment. (Tr. 288.) The ALJ cited the findings of Dr. McKnight who opined there is no justification for the diagnosis of mood disorder due to head injury with emotional dysregulation. (Tr. 25.) Dr. McKnight testified, "It may be true, but there's no relevant justification, and he has

chronically used a substance known to produce mood impairment and emotional dysregulation."
(Tr. 51.) Dr. McKnight also noted the only basis for the diagnosis of dysthymic disorder is
plaintiff's self-report. (Tr. 25, 51.) With respect to impulse control disorder, Dr. McKnight
testified the diagnosis of mood disorder with emotional dysregulation counteracts the diagnoses
of dysthymic disorder. (Tr. 25, 51.) Lastly, according to Dr. McKnight, the diagnosis of
personality disorder in Dr. Billings' report is not supported by details of the characteristics of
that disorder. (Tr. 25, 51-52.)

        The ALJ gave significant weight to Dr. McKnight's opinion and some weight to Dr.
Billings findings. (Tr. 31.) In appropriate circumstances, opinions from state agency medical
consultants may be entitled to greater weight than the opinions of treating or examining sources.
S.S.R. 96-6p. The opinion of a non-examining physician may be accepted as substantial evidence
if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53
F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The ALJ
pointed out Dr. McKnight had the opportunity to review the record as a whole and concluded the
evidence supports Dr. McKnight's findings that plaintiff has mild limitations in activities of daily
living and social functioning. (Tr. 27, 31.) The ALJ accorded weight to Dr. Billings' findings
that plaintiff's intellectual functioning, memory and cognition are all within normal limits and
that the anxiety and paranoia reported by plaintiff are directly associated with his marijuana use.
(Tr. 31-32, 288-89.) However, the ALJ did not give weight to Dr. Billings' diagnoses or to the
social limitations identified by Dr. Billings. Dr. McKnight observed there is no documentation
plaintiff had any significant social problems in interacting with Dr. Billings over the course of a
minimum of three hours. (Tr. 26, 53-54.) In addition to Dr. McKnight's opinion, the ALJ cited
other substantial evidence supporting the conclusion that plaintiff has no social limitations that
interfere with plaintiff's ability to work. (Tr. 21-27.) As a result, to the extent Dr. McKnight's
opinion and Dr. Billings' opinions conflicted, the ALJ reasonably relied on Dr. McKnight's
testimony.

        Based on the foregoing, the ALJ reasonably rejected the diagnoses of mood disorder,
dysthymic disorder, impulse control disorder, personality disorder and post-head injury chronic
pain as severe impairments. A diagnosis alone does not establish an impairment at step two. *See
e.g. Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545,
1549050 (9th Cir. 1985). A severe impairment is an impairment that significantly limits a

claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). The evidence cited by the ALJ supports the conclusion that there is no significant limitation on the ability to do basic work activities from the diagnoses made by Dr. Billings. Substantial evidence supports the ALJ's conclusion that these diagnoses are not severe impairments and the ALJ did not err.

**2.    Dr. Flanagan**

Plaintiff argues the ALJ failed to include all the limitations identified by Dr. Flanagan in the RFC despite giving "great weight" to Dr. Flanagan's opinion. (EC No. 17 at 8-10.) In July 2008, Dr. Flanagan reviewed the record and identified four moderate limitations and one marked limitation in the "Summary Conclusions" portion of a Social Security Administration Mental Residual Functional Capacity Assessment form. (Tr. 306-07.) Plaintiff argues these limitations should have been included in the ALJ's residual functional capacity assessment. (ECF No. 17 at 8-9.)

First, plaintiff's argument that the check-box limitations assessed by Dr. Flanagan in the "Summary Conclusions" in section I of the MRFC form should be included in the RFC fails because those findings are not intended as a residual functional capacity assessment. The form itself identifies section III as the "Functional Capacity Assessment." (Tr. 308.) As pointed out by defendant, the SSA's operations manual provides section I is "merely a worksheet" and "does not constitute the RFC assessment" while section III is the "actual mental RFC assessment." Program Operations Manual System (POMS) DI 24510.060.B.2. (October 14, 2010). Thus, the check-box limitations identified by Dr. Flanagan are not appropriately considered part of the RFC. In section III, the "Functional Capacity Assessment" portion of the form, Dr. Flanagan opined plaintiff is capable of simple and detailed tasks; concentration, persistence and pace are occasionally impaired secondary to symptoms; and plaintiff is limited to superficial contact with coworkers and away from the public. (Tr. 308.) These are the functional limitations assessed by Dr. Flanagan.

Second, plaintiff erroneously asserts the ALJ assigned "great weight" to Dr. Flanagan's opinion. (ECF No. 17 at 8.) The ALJ actually assigned "some weight" to the opinion, which is less than the ""significant weight" assigned to Dr. McKnight's opinion and the "great weight" given to the opinions of Drs. Tarique and Ho. (Tr. 31-32.) The ALJ noted Dr. Flanagan's opinion supports a finding of nondisability and there are a number of other reasons to reach conclusions

"similar" to those contained therein as discussed throughout the decision, but did not give significant weight to or adopt Dr. Flanagan's opinion. (Tr. 32.) It is the ALJ's responsibility to make the residual functional capacity determination and not the responsibility of the physician or psychologist. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). The ALJ's duty is also to resolve evidentiary conflicts, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1985). The ALJ detailed evidence supporting the mental residual functional capacity finding which does not include the limitations assessed by Dr. Flanagan. (Tr. 28-32.) It is noted that Dr. Flanagan's opinion is based in part on Dr. Billings' findings which the ALJ did not accept entirely for reasons discussed *supra*. (Tr. 304.) As a result, it is reasonable to infer the ALJ rejected similar limitations for the same reasons. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (finding the court may make inferences from the ALJ's discussion of the evidence). Thus, it was reasonable for the ALJ to give some weight to the opinion but not adopt the functional assessment as part of the RFC finding. As a result, the ALJ did not err with respect to Dr. Flanagan's opinion.

### 3.    Dr. McRae

Plaintiff argues the ALJ erred by failing to consider or reject Dr. McRae's opinion regarding plaintiff's inability to work. (ECF No. 17 at 13-17.) The record contains a form entitled "Certification for Medicaid: GAX Referral." (Tr. 265.) The document is addressed to Dr. John McRae from Rocio Burkhardt, Yakima CSO. (Tr. 265.) Under the "comments" section of the form, there is a typed statement: "Seriously disturbed, needs to have psy tx to stabilize and be able to return to work force." (Tr. 265.) Psychosis, dementia, depression and polysubstance dependence are listed under the heading "diagnoses." (Tr. 265.) There is no signature on the form or any other explanatory or supporting information. (Tr. 265.) Plaintiff asserts this is a "medical source statement that supports a finding of disability" and that form is the opinion of Dr. McRae that "Mr. Saltos met the SSA standard of disability." (ECF No. 17 at 13; ECF No. 22 at 6.) The ALJ did not discuss or mention the form in the decision.

However, this form does not constitute medical opinion evidence of disability. There is no evidence the contents of the form were written by a physician or psychologist. The form is addressed to Dr. McRae and not signed by him or otherwise noted to have been completed by him. Even if Dr. McRae completed the form, the limited narrative content suggests a return to work is expected after treatment and therefore supports the nondisability finding. An impairment

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

that can be effectively controlled with treatment is not disabling. *Warre v. Comm'r Soc. Sec. Admin.*, 43 F.3d 1001, 1006 (9th Cir. 2006). Further, despite plaintiff's assertion that the form represents a statement of disability, the term "disability" is not mentioned anywhere on the form. The ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). At most, the form contains an unsupported statement indicating the opinion of an unknown source that plaintiff is "seriously disturbed" and several diagnoses. This evidence is not significant probative evidence and is not the type of evidence that "directly bears on the outcome of the case." (ECF No. 17 at 17.) As a result, the ALJ did not err by failing to discuss the Certification for Medicaid form.

### 4.    Clark and Vaagan Opinions

Plaintiff argues the ALJ erred by improperly rejecting the opinions of two therapists, Christopher Clark, M.Ed., LMHC, and Lindsey Vaagan, MSW. (ECF No. 17 at 17-19.) The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source."20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996)."Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources.20 C.F.R. §§ 404.1513(d), 416.913(d). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

Mr. Clark completed a DSHS Psychological/Psychiatric Evaluation form in March 2008. (Tr. 252-55.) He diagnosed psychosis NOS, dementia NOS, depression NOS, and polysubstance abuse unspecified. (Tr. 253.) He assessed three marked and two moderate cognitive limitations and four marked and one moderate social limitation. (Tr. 254.) Ms. Vaagan completed a DSHS Psychological/Psychiatric Evaluation form in April 2009. (Tr. 386-89.) Ms. Vaagan diagnosed psychotic disorder NOS and cannabis dependence. (Tr. 387.) She opined plaintiff has two marked and three moderate cognitive limitations and one severe, two marked and one moderate

social limitations. (Tr. 388.) The ALJ gave little weight to the form opinions by Mr. Clark and Ms. Vaagan for several reasons. (Tr. 32.)

First, the ALJ noted the opinions were rendered on check-box forms and do not contain significant explanations of the basis for conclusions. (Tr. 32.) Individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). Opinions on a check-box form or form reports which do not contain significant explanation of the basis for the conclusions may accorded little or no weight. *See Crane* at 253; *Johnson v. Chater*, 87 F.3d 1015, 1018 (9th Cir. 1996). Ms. Vaagan's opinion contains two brief sentences explaining the cognitive limitations and two brief sentences explaining the social limitations assessed. (Tr. 388.) Plaintiff argues the explanations of Mr. Clark and Ms. Vaagan are "significant." (ECF No. 17 at 17.) However, the court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ's determination that the brief comments by Mr. Clark and Ms. Vaagan do not constitute a significant explanation of the basis for their conclusions is a reasonable interpretation of the evidence. Thus, the first reason given by the ALJ is germane to the opinions and supported by the evidence.

Second, the ALJ pointed out the definitions of "marked" or "severely limited" on the DSHS form differs from the definitions contained in SSA regulations. (Tr. 32.) The DSHS form indicates a severe limitations involves the "inability to perform one or more basic work-related activities;" a marked limitation involves "very significant interference with work-related activities;" and a moderate limitation involves "significant interference with work-related activities." (Tr. 252, 386.) Social security regulations indicate a marked limitation is one of such degree "to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 12.00(C)(1). This difference in language makes evaluation of the opinions rendered on DSHS check box forms more difficult and the opinions are therefore less valuable to the ALJ in assessing disability. This is germane to both therapist opinions.

Third, the ALJ determined the findings of Mr. Clark and Ms. Vaagan contrast with the other evidence of record, rendering the opinions less persuasive. (Tr. 32.) The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th

Cir. 2007). The ALJ observed the therapist opinions are without substantial support from other evidence of record. (Tr. 32.) Both therapists found significant cognitive impairment, yet Dr. McKnight and Dr. Billings found plaintiff's cognitive functioning within normal limits (Tr. 53, 288-89.) Further, the ALJ detailed substantial evidence regarding plaintiff's social functioning inconsistent with the significant findings of Mr. Clark and Ms. Vaagan. (Tr. 27.) The ALJ's assertion that the therapist opinions are not consistent with other evidence of record is supported by substantial evidence and this is a germane reason to each therapist opinion.

In addition, the ALJ noted neither therapist adequately addressed plaintiff's history of noncompliance with prescribed medication or plaintiff's drug and alcohol history. (Tr. 32.) Neither therapist noted plaintiff's significant history of noncompliance with recommended treatment (Tr. 30) as a factor in the functional assessments. Mr. Clark indicated plaintiff was "using cannabis infrequently" in contrast to other evidence in the record indicating more regular use, suggesting his opinion is not based on accurate information regarding substance use. (Tr. 30-31, 373.) Ms. Vaagan noted variously: drug treatment would be likely to decrease the severity of the condition (Tr. 387); plaintiff reported cannabis use helps him manage his mood, decrease anxiety and improve functioning (Tr. 388); and plaintiff "seems ambiguous about stopping his cannabis use." (Tr. 389.) Based on these statements, while it is evident that Ms. Vaagan was aware of plaintiff's cannabis use, it is not clear whether or how she considered the effects of marijuana use in assessing limitations. The ALJ's reasoning is supported by the evidence and is germane to each therapist.

Another reason mentioned by the ALJ in rejecting the opinions of Mr. Clark and Ms. Vaagan is they relied heavily on plaintiff's subjective report of symptoms and limitations. (Tr. 32.) A medical opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595 (9th Cir. 1999); *Fair*, 885 F.2d at 604. The ALJ found plaintiff not credible and plaintiff does not object to that finding.[1] As a result, the ALJ reasonably rejected the

---

[1] Plaintiff listed "improper credibility findings" as assertions of error (ECF No. 17 at 2, 17; ECF No. 22 at 5) but made no argument explaining how the ALJ's reasons are insufficient as a matter of fact or law. The court concludes the ALJ cited clear and convincing reasons supported by substantial evidence which justify the credibility determination. (Tr. 29-31); *see Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The court declines to further address this issue which was not

therapist opinions supported primarily by plaintiff's complaints. Because the therapist opinions are inconsistent with other evidence in the record and for other reasons discussed herein, the ALJ reasonably concluded they are based primarily on plaintiff's statements. Therefore, this is also a reason germane to each therapist.

The ALJ also mentioned the reports by Mr. Clark and Ms. Vaagan were made in a secondary gain context and suggested "a clinician may express an opinion in an effort to assist a patient with whom he or she sympathizes." (Tr. 32.) To the extent the ALJ rejected the therapist opinions based on these statements, the ALJ erred. The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996). Further, an ALJ "may not assume doctors routinely lie in order to help their patients collect disability benefits." *Id.* (quoting *Ratto v. Secretary*, 839 F.Supp. 1415, 1426 (D.Or. 1993). The ALJ also rejected Mr. Clark's and Ms. Vaagan's opinions because contemporaneous notes by the therapists support less severe findings. (Tr. 32.) The ALJ did not cite to the record or otherwise explain the basis for this reasoning. (Tr. 32.) Notwithstanding, the ALJ cited other germane reasons supported by substantial evidence for rejecting the opinions of Mr. Clark and Ms. Vaagan. *See e.g., Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Therefore, the outcome is the same despite the improper reasoning and any error is harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984). The ALJ cited a number of germane reasons supported by substantial evidence for rejecting the opinions of Mr. Clark and Ms. Vaagan. As a result, remand is not appropriate.

argued with specificity. *Carmickle v. Commissioner, Soc. Sec. Admin.*,533 F.3d 1155, 1161 (9th Cir. 2008)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

**IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment **(ECF No. 21)** is **GRANTED.**

2.      Plaintiff's Motion for Summary Judgment **(ECF No. 17)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED April 9, 2013

_____*s/Fred Van Sickle*_____
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15